## IN THE UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| TAYLOR BEAN & WHITAKER MORTGAGE CORP., et al., | |
| Debtors. | Chapter 11<br>Case No. 09-07047 JAF |
| NICHOLAS A. CALLAHAN, JULIE WHITEAKER, ERIC E. ANDERSON, CHRIS ESCANDON, CHARLES VAN HARTSELL III, DEBRA ORLANDO, DEZI TEIANN JESSOP, WILLIAM P. HICKEY III and TANJANIKA CARTER, on behalf of themselves and all others similarly situated, | Adv. Pro No. 09-00439-JAF |
| Plaintiffs, | |
| v. | |
| TAYLOR BEAN & WHITAKER MORTGAGE CORP., et al. | |
| Defendants. | |

**JOINT MOTION BY THE TAYLOR, BEAN & WHITAKER PLAN TRUST AND PLAINTIFFS FOR (A) AN ORDER (I) PRELIMINARILY APPROVING SETTLEMENT AGREEMENT RESOLVING WARN ACT CLAIMS; (II) APPROVING THE FORM AND MANNER OF NOTICE TO CLASS MEMBERS OF THE PROPOSED SETTLEMENT AGREEMENT; AND (III) SCHEDULING A FINAL FAIRNESS HEARING FOR APPROVAL OF THE SETTLEMENT AGREEMENT; AND (B) AN ORDER FINALLY APPROVING THE SETTLEMENT AGREEMENT INCLUDING CLASS COUNSEL'S REQUEST FOR FEES AND COSTS FOLLOWING THE FAIRNESS HEARING**

The Taylor, Bean & Whitaker Plan Trust (the "**Plan Trust**"), on behalf of TBW[1], and the

Named Plaintiffs[2] by and on behalf of themselves and as Class Representatives for the Class

---

[1] "**TBW**", as used herein, includes Taylor, Bean & Whitaker Mortgage Corp., REO Specialists LLC, Home America Mortgage, Inc., Maslow Insurance Agency, LLC, Security One Valuation Services, LLC, Platinum Community

defined in the Order of September 27, 2010 ("**Class Representatives**"), represented by their

Class Counsel, Outten & Golden LLP ("**Class Counsel**"), hereby file this Joint Motion to

Approve Settlement and Release Agreement ("**Motion**") as to all claims and potential causes of

action by and among TBW, Plaintiffs, and the Official Committee of Unsecured Creditors of

Taylor, Bean & Whitaker Mortgage Corp. (the "**Committee**") in the action *Callahan, et al. v.*

*Taylor Bean & Whitaker Mortgage Corp.,* Chapter 11, Adv. Pro. No. 09-000439-JAF (the

"**WARN Class Action**").  A true and correct copy of the Settlement and Release Agreement

dated as of August 23, 2011 (the "**Settlement Agreement**") is attached hereto as **Exhibit A**.[3]

The Plan Trust and the Plaintiffs are collectively referred to hereinafter as the "**Parties**", and in

support of the Motion, the Parties respectfully represent as follows:

## I.   Introduction

1.      The Class Representatives sued TBW for allegedly failing to provide 60 days

written notice to its approximately 3,000 employees before ordering mass layoffs and/or plant

closings, as required by the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§

2101 *et seq.* (the "**WARN Act**").  The Class Representatives assert that all of the TBW entities

set forth in footnote 1 of this Motion were a "single employer" under the provisions of the

WARN Act and are therefore jointly and severally liable for any alleged WARN Act damages.

Class Counsel contends that, should the Class Representatives prevail in the litigation, the

WARN Act priority claim of the 2,931 Class Members for 60 days wages and benefits would be

approximately $21.4 million, plus attorneys' fees and costs.  Under the Settlement Agreement, in

---

Bank, Citrus Land & Title, LLC, Clear Title, LLC, 24/7 Call Capture, and CDF Tax, Flood & Insurance Services, LLC.
[2] Capitalized terms, unless otherwise defined in this Motion, shall have the meanings attributed to them in the Settlement Agreement.
[3] To protect the privacy of Class Members, Exhibit A to the Settlement Agreement listing all Class Members will be maintained by TBW and Plaintiffs' counsel and will be provided to the Court for an *in camera* inspection if necessary.

exchange for a full release for any claim arising from the mass layoffs and/or plant closings, the Plan Trust will establish a $15 million settlement fund for the Class (to be treated as an unclassified priority claim), inclusive of attorneys' fees and costs (the "**Settlement Fund**"), which Class Counsel believes represents approximately a 70% recovery of the priority portion of the Class WARN Act claim.  The Settlement Fund will be distributed to the Class Members in accordance with the terms of the Settlement Agreement and Debtors'[4] confirmed Plan (defined below).

2.       Litigation of the WARN Class Action would be protracted and expensive.  The Plan Trust contends that the shutdown of TBW's operations on August 5, 2009 was caused by a sudden, dramatic event outside of TBW's control.  Accordingly, the Plan Trust contends that the unforeseeable business circumstances exception to the sixty (60) day notice requirement of the WARN Act excused TBW from providing any advance written notice of the shutdown to its employees.

3.       The Plan Trust also asserts additional defenses to WARN Act liability, including the liquidating fiduciary defense.  Further, to the extent that the aforementioned exceptions to the WARN Act do not apply, the Plan Trust asserts that there should be a reduction of any purported damages based upon TBW's good faith belief that its actions complied with the provisions of the WARN Act.

4.       The Class Representatives contend that the shutdown of TBW was foreseeable more than 60 days prior to August 5, 2009, and that the events that led to the shutdown were not only foreseeable, but inevitable.  The Class Representatives also contend that none of the other WARN Act exceptions are applicable.

---

[4] As used herein, "**Debtors**" means Taylor, Bean & Whitaker Mortgage Corp, REO Specialists, LLC and Home America Mortgage, Inc.  "**Debtor**" individually shall refer only to Taylor, Bean & Whitaker Mortgage Corp.

5.      A trial on the applicability of the unforeseeable business circumstances exception (as well as the other asserted defenses) would require both sides to engage in more extensive expert and non-expert discovery at significant expense and with inherently uncertain results at trial.

6.      Moreover, if the Court found that the Class Members were entitled to even one more day of notice than they were provided, then the Class Members contend that they would be the prevailing parties entitled to not only their damages, but their attorneys' fees and costs, risking further depletion of the estates' resources.  The proposed Settlement Agreement provides a global resolution to the WARN Class Action and over 1000 related proofs of claim.

7.      Furthermore, without the settlement, the Class could wait years for any payment on their alleged WARN claims, even if they prevail at trial and on appeal, and risk depletion of the Plan Trust through continued administrative and litigation costs.

8.      In light of these factors, the Parties have determined that the terms of the Settlement Agreement are fair and reasonable.

9.      The Parties request a two-step approval process to facilitate notice to Class Members and approval of the Settlement Agreement.  First, the Parties will seek at an initial hearing preliminary approval of the Settlement Agreement and the form of notice to be given to the Class Members ("**Class Notice**") by first class mail.  The Class Notice will describe the Settlement Agreement; inform the Class Members of their right to object to the Settlement Agreement, set forth the deadline for objections, and set the date and time of the second hearing, including the Fairness Hearing, to determine final approval of the Settlement Agreement.  The relief sought at the initial hearing is referred to hereinafter as the "**Preliminary Relief**."

10.     Second, after service of the Class Notice, the Parties request that the Court hold a Fairness Hearing and finally approve the Settlement Agreement.

11.     Based on the foregoing, and as set forth more fully below, the Parties submit that the Court should approve the Settlement Agreement and the procedures proposed in this Motion.

## II.    Jurisdiction

12.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334 and the Court's retained jurisdiction as specified in the Confirmation Order (defined below). The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)and (B) because, *inter alia*, the Settlement Agreement, as more fully set forth below, resolves over 1000 proofs of claim and thus significantly contributes to the efficient administration of the Debtor's estate.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1408.

## III.    Background

14.     On August 3, 2009, federal law enforcement agencies simultaneously executed search warrants at TBW's Ocala, Florida headquarters and at the Orlando, Florida offices of Colonial Bank.

15.     On August 4, 2009, TBW was notified that its authority to originate, sell or service mortgages was immediately suspended and/or terminated by the United States Department of Housing and Urban Development and the Government National Mortgage Association.  On the same day, the Federal Home Loan Mortgage Corporation ("**Freddie Mac**") provided written notice to TBW of termination of TBW's eligibility to sell mortgages to and service mortgages for Freddie Mac.

16.    On August 5, 2009, Colonial Bank placed an administrative hold on all of TBW's accounts.  On August 11, 2009, the Federal Deposit Insurance Corporation ("**FDIC**") issued a temporary order to Colonial Bank directing it to first seek approval from the Regional Director before engaging in any transaction with Taylor, Bean & Whitaker Mortgage Corp.(the "**Debtor**"), its affiliates, or related entities. By order dated August 14, 2009, the Alabama State Banking Department closed Colonial Bank and appointed the FDIC, as Receiver of Colonial Bank.

17.    As a result of the above-described events, TBW was unable to conduct business and shut down.  On August 5, 2009, TBW laid off the majority of its employees and reduced its business operations to the minimum level necessary to preserve its assets.

18.    On August 10, 2009, Nicholas A. Callahan filed in the United States District Court for the Middle District of Florida, on behalf of himself and all others similarly situated, his Complaint for violation of the WARN Act against TVW (the "**Callahan Action**").

19.    On August 11, 2009, Sharon and Charles LeForce (the "**LeForces**") initiated a similar action to the Callahan Action in the United States District Court for the Northern District of Georgia (case 1:09-cv-02167-RWS)(the "**LeForce Action**").

20.    On August 24, 2009, the Debtor filed with this Court its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

21.    On August 24, 2009, the Plaintiffs filed the WARN Class Action seeking relief under the WARN Act on behalf of themselves and all similarly situated persons, alleging that TBW violated the Federal WARN Act by ordering plant closings and/or mass layoffs on or about August 5, 2009 and thereafter, without providing sixty (60) days advance written notice thereof. The Plaintiffs further asserted that, as a consequence of this alleged failure, they have an

administrative priority claim pursuant to §503(b)(1)(A) and/or priority claim pursuant to § 507(a)(4)-(5) of the Bankruptcy Code against TBW for damages for the alleged sixty (60) day violation period.

22.      On August 27, 2009, the LeForces initiated a similar action to the WARN Class Action in this Court 3:09-ap-00448-JAF.

23.      In late October 2009, the LeForces terminated their adversary proceeding and the LeForce Action in favor of supporting the WARN Class Action, thereby avoiding costly and duplicative litigation.

24.      On November 6, 2009, Plaintiffs' filed their Motion for Appointment as Interim Class Counsel Pursuant to Fed. R. Civ. P. 23(g), which was granted following a hearing on January 8, 2010.

25.      The Committee sought and was, thereafter, granted intervention in the WARN Class Action on March 2, 2010.

26.      TBW filed, and the Committee joined, a motion to dismiss the WARN Class Action, asserting that the Plaintiffs' claims should be handled through the claims administration process (the "**Motion to Dismiss**").

27.      On March 25, 2010, the Plaintiffs filed a Motion for Class Certification and Related Relief, which was opposed by TBW and the Committee.

28.      On May 25, 2010, while Plaintiffs' Motion for Class Certification was pending, the Plaintiffs filed their Motion for Enlargement of Time to File WARN Act Proof of Claims (the "**Bar Date Motion**"), which was opposed by TBW and the Committee.  Plaintiffs' Motion was denied on June 1, 2010.

29.     As a result of the denial of Plaintiffs' Bar Date Motion, Class Counsel caused to be filed 1,135 individual WARN Act proofs of claims, on behalf of each of its retained clients, on or before the June 15, 2010 general bar date in the Debtor's bankruptcy case.  In addition, on June 15, 2010, Class Counsel filed a "Class Proof of Claim on Behalf of Former Employees of Debtor for WARN Act Damages."  (The aforesaid individual WARN proofs of claim and the Class Proof of Claim are referred to herein, collectively, as the "**WARN Proofs of Claim**.")

30.     During the pendency of the Chapter 11 Cases, certain other former TBW employees filed individual proofs of claim asserting claims that are based on or related to the WARN Act, together with those filed by Class Counsel (the "**Individual WARN Claims**").

31.     On August 31, 2010, the Court held a hearing on the Motion to Dismiss.

32.     On September 27, 2010, the Court denied the Motion to Dismiss and granted the Plaintiffs' Motion for Class Certification, defining the Class, appointing the Plaintiffs as Class Representatives of the Class, and appointing Outten & Golden LLP and Gray Robinson as class counsel.  [Docket Nos. 72, 73 &74]  The Court in its order granting class certification defined the class as follows:

> Plaintiffs and the other former employees of Defendants, (i) who worked at or reported to one of Defendants' facilities and who were terminated as part of, or as the foreseeable result of mass layoffs or plant closings ordered by Defendants on or about August 5, 2009, within thirty (30) days of that date, and thereafter, and who are affected employees within the meaning of 29 U.S.C. § 2101(a)(5)(ii) and who have not filed a timely request to opt out of this class.

33.     Notice of the WARN Class Action was sent to Class Members on October 15, 2010.  Ten Class Members requested exclusion from the Class.  [Docket No. 84]

34.     On October 20, 2010, TBW filed its answer and affirmative defenses to the Complaint in the WARN Class Action, denying the material allegations of the Complaint and asserting, among other affirmative defenses, that (i) TBW was not an "employer" for purposes of

the WARN Act pursuant to the liquidating fiduciary defense, (ii) TBW provided sufficient notice under the faltering company defenses as enumerated in 29 U.S.C. § 2102(b)(1); (iii) TBW provided sufficient notice under the unforeseeable business circumstances defense as enumerated in 29 U.S.C. § 2102(b)(2)(A); and (iv) TBW acted in good faith and had reasonable grounds for believing its conduct was not in violation of the WARN Act.

35.    On June 22, 2011, the Debtors and the Committee, as co-proponents, filed their Third Amended and Restated Joint Plan of Liquidation of the Debtors and the Official Committee of Unsecured Creditors (the "**Plan**").

36.    On July 21, 2011, the Bankruptcy Court entered an order in the Chapter 11 Cases confirming the Plan (the "**Confirmation Order**"), resulting in the creation of the Plan Trust, the appointment of the Plan Trustee ("**Trustee**") and the dissolution of the Committee.

## IV.    Discovery and the Settlement Negotiations

37.    The Debtors, the Committee and the Named Plaintiffs engaged in substantial discovery in this matter, including Class Counsel's review of tens of thousands of documents produced in response to discovery requests, review and analysis of payroll records for issues regarding inclusion in the certified class and damages, and the exchange of damage calculations and theories of the case in the form of mediation statements.

38.    The Debtors, the Committee and the Named Plaintiffs mediated the WARN Class Action on May 18 and 19, 2011 in Atlanta, Georgia, before a well qualified and experienced mediator, Michael Dickstein.

39.    The complexity of the factual and legal issues, the uncertainty of a specific result, along with the inherent delay and substantial expense of litigation, led the Parties to conclude

that it is in their respective best interests to resolve their disputes through a comprehensive compromise.

40.    The Parties have memorialized the terms of their compromise in the Settlement Agreement.  The Settlement Agreement is a settlement of any and all claims asserted, or which could have been asserted, in the WARN Class Action and in the WARN Proofs of Claim.

41.    In light of the Settlement Agreement, the Plan Trust has agreed to a tolling of the deadline to respond to the Seventeenth Omnibus Objection to Claims [D.E. No. 3548], only as to the portion of the claim being settled by the Settlement Agreement, and the Nineteenth Omnibus Objection to Claims through the Thirty-First Omnibus Objection to Claims [D.E. Nos. 3535-3547] until the Effective Date of the Settlement, in which case these objections to the WARN Proofs of Claim will be fully settled, or 30 days after the Court disapproves the Settlement Agreement.

## V.    Significant Terms of the Settlement Agreement

42.    The material terms of the Settlement Agreement are as follows:

a.    Creation of a Settlement Fund:  Provides for a payment from the Plan Trust to the Class in the amount of Fifteen Million Dollars ($15,000,000) (the "**Settlement Fund**"), inclusive of Class Representatives' service payments as approved by the Court and Class Counsel's attorneys' fees, which include Class Counsel's out-of-pocket expenses and the cost of administration of the settlement, as approved by the Court.  The Plan Trust shall also pay the employer's share of payroll taxes due for each employee after deductions from the Settlement Fund for the Class Representatives' service payments, as approved by the Court, and Class Counsel's attorneys' fees, as approved by the Court.  Each employee shall also have deducted from his/her distribution all applicable employee taxes and withholdings as required by federal law;

b.    Provides for distribution of the Settlement Fund to Class Members in accord with Exhibit C to the Settlement Agreement;

c.    Provides that no Class Member who is indicted, prosecuted, pled guilty or is convicted in connection with their employment with TBW shall be deemed to have suffered an employment loss under the WARN Act

enabling them to receive a disbursement under the terms of the Settlement Agreement;

d.    Provides that all payments made pursuant to the Settlement Agreement will be treated as distributions to holders of unclassified claims under the Plan and shall receive the same priority in distribution as priority claims made under Section 507(a)(4) of the Bankruptcy Code; provided however, that such distributions shall be subject to the $10,950 limitations under that section applicable to the Chapter 11 Cases;

e.    Provides that Plaintiffs shall not be the holders of claims in any class of general unsecured creditors under the Plan;

f.    <u>Payment to Class Representatives</u>:  Provides for Service Payments to the nine (9) Class Representatives in the amount of Ten Thousand Dollars ($10,000) each, in addition to the LeForces who shall each receive Seven Hundred and Fifty Dollars ($750) for their service to the Class.  Service Payments will be made in addition to the Class Representatives' and the LeForces' individualized settlement amounts and Class Counsel's fees will not be deducted from the Service Payments;

g.    <u>Class Counsel's Fees</u>:  Provides for Class Counsel to apply to the Court for payment from the Settlement Fund of a fee award equal to thirty-three and one-third percent (33⅓%) of the Settlement Fund, net of  Service Payments and inclusive of Class Counsel's expenses and the cost of administration of the Settlement;

h.    <u>Release of Debtors</u>:  Provides that Plaintiffs shall release TBW and its affiliates, officers, directors, agents, etc., the Plan Trust, the Plan Trustee and the Committee, upon the effective date of the Settlement Agreement, from all WARN Act-related claims, including all claims for benefits, bonuses, commissions, or any other payment dependent on WARN Act recovery, and all WARN Proofs of Claim, which proofs of claim shall be deemed withdrawn such that all WARN Act claims shall be channeled into the Adversary and resolved under the terms of this Agreement, with the exception of those proofs of claim filed by individuals who chose to timely opt-out of the WARN class.  Valid claims for vacation pay for which Class Member timely submitted a proof of claim are not subject to the release.  The Named Plaintiffs will execute individual releases dismissing their claims in the Adversary.

i.    Provides that the Settlement Agreement shall become effective, and that the Plan Trust will pay the Settlement Fund, within ten (10) days after the later of: (a) the effective date of the Plan, or (b) the entry of a final order approving the Settlement Agreement and that order becoming non-appealable;

j.  <u>Issuance of Notice of the Settlement</u>: Provides that Class Counsel will provide Notice of Settlement to the Class Members by first class mail to each Class Member's last known address, an individualized Class Notice, within ten (10) days of this Court's order granting preliminary approval of the settlement, indicating:

- the date such Class Member was terminated, the office location to which the Class Member was assigned as of the date of his/her termination, and the Class Member's base salary or rate of pay, if known, as of the date of termination of employment;

- that the Settlement Agreement shall become effective only if it is finally approved by the Bankruptcy Court;

- that, if so approved, the Settlement Agreement shall be effective as to all Class Members who did not opt-out of the Class;

- the dollar amount such Class Member would receive under this Settlement, before Class Counsel's fees are deducted, as well as an estimate of such net payment after such amounts are deducted;

- the projected amount to each Class Member shall be calculated by Class Counsel;

- that such Class Member has the right to object to this Settlement Agreement in person, to retain counsel and be heard at the Fairness Hearing; and

- that all Released Claims of a Class Member (other than those claims to be paid under the terms of the Settlement Agreement) shall be waived, and that no person, including the Class Member, shall be entitled to any further distribution thereon.

k.  <u>Residual Funds</u>:  Provides that settlement checks mailed to Class Members that are not cashed within 180 days shall revert back to the Plan Trust.

## VI.    <u>Manner of Notice of Settlement to the Class</u>

43.    Upon entry of an order preliminarily approving the Settlement Agreement,

approving the form and manner of notice to the members of the Class, and scheduling a

Fairness Hearing no earlier than the earliest date for entry of a binding order under 28 U.S.C.

§ 1715 (a)-(d), the Plan Trust will cause notice of the proposed Settlement Agreement and the

Fairness Hearing to be served upon the Office of the United States Trustee and all parties requesting notice of proceedings in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.

44.     With regard to the members of the Class, the Parties propose that the Notice of the Proposed Settlement of Class Action and Fairness Hearing that is attached hereto as **Exhibit B** be served on all Class Members, and such notice shall comprise such notice to the Class Members as is necessary for approval of the Settlement Agreement.

45.     The Parties further submit that service of the Class Notice by first class mail, postage prepaid, to each Class Member at each Class Member's last known address as shown in the Debtors' records, as updated by Class Counsel, is the best notice practicable under all the circumstances.  Furthermore, while Federal Rule of Civil Procedure 23, as adopted by Bankruptcy Rule 7023, does not impose a minimum notice period, the Parties have attempted to ensure that the parties in interest in the Chapter 11 Cases and all potential Class Members receive a minimum of 21 days notice of the Fairness Hearing, as required under Bankruptcy Rule 2002.

46.     Although no rigid standards govern the contents of notice to Class Members, the notice must "fairly apprise the prospective members of the Class of the [proceedings] and of the options that are open to them in connection with [the] proceedings," *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir.), *cert. denied*, 423 U.S. 864 (1975), *quoting, Philadelphia Hous. Auth. v. Amer. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 378 (E.D. Pa. 1970), *aff'd sub nom, Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30 (3d Cir.1971).  Individual mailings to each potential Class Member's last known address is appropriate.  *See, e.g., White v. Nat'l Football League*, 41 F.3d 402, 408 (8th Cir. 1994); *Weinbarger v. Kendrick*, 698 F.2d 61, 71 (2d Cir. 1983); *Varacallo v. Mass. Mut. Life Ins. Co.*,

226 F.R.D. 207, 225 (D.N.J. 2005); *Steiner v. Equimark Corp.*, 96 F.R.D. 603, 614 (W.D. Pa. 1983); *Trist v. First Fed. Sav. & Loan Ass'n*, 89 F.R.D. 1, 2 (E.D. Pa. 1980).

47.     Here, the contents of the proposed Class Notice are sufficient.  The Class Notice summarizes the WARN Class Action and apprises the Class of the terms of the Settlement Agreement, that complete information regarding the Settlement Agreement is available upon request from Class Counsel, that any Class Member may object to the proposed Settlement Agreement, and that any Class Member may appear at the Fairness Hearing in person or by their own counsel.  In short, the proposed Class Notice satisfies all the requirements of Federal Rule of Civil Procedure 23(c)(2)(B).

48.     In light if the nature of the relief requested, the Parties submit that no other or further notice need be given.

## VII.    Relief Requested and Basis Therefore

49.     In addition to the Preliminary Relief, the Parties seek the Court's final approval of the Settlement Agreement pursuant to Rule 9019(a) of the Bankruptcy Rules and pursuant to the Trustee's authority in the Plan Trust Agreement to seek Bankruptcy Court approval of settlement agreements.

## A.    The Legal Standard

50.     Numerous courts have emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate 'compromises are favored in bankruptcy.'" *In re Auto Tower, Inc.*, No. 05-10578, 2006 Bankr. LEXIS 2220, at *9 (Bankr. S.D.N.Y. June 28, 2006) (*citing In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1](15th Rev. Ed. 1993)). *See also In re Culmetech, Ltd.*, 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990)("[C]ompromises are favored in bankruptcy and . . . much of litigation in

bankruptcy estates results in settlement").  Bankruptcy Rule 9019 authorizes a bankruptcy court to approve a compromise or settlement after notice and a hearing. Fed. R. Bankr. P. 9019(a). Section 105 of the Bankruptcy Code empowers a court to issue any order that is "necessary or appropriate" 11 U.S.C. § 105(a).

51.     Rule 9019 of the Bankruptcy Rules governs the procedural requirements to be followed before a settlement may be approved. Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  This rule empowers the bankruptcy court to approve a proposed compromise or settlement "if [it is] in the best interests of the estate."  *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  The settlement need not result in the best possible outcome for the debtor but must not "fall below the lowest point in the range of reasonableness." *Id.*

52.     Settlements and compromises are "a normal part of the process of reorganization."  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).  To approve a compromise or settlement under Bankruptcy Rule 9019(a), a bankruptcy court should find that the compromise or settlement is supported by adequate consideration, is fair and equitable, and is in the best interests of the debtor's estate.  *See In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994). The decision to approve or deny a particular compromise or settlement involving a bankruptcy estate lies within the sound discretion of the Bankruptcy Court.  *See Drexel Burnham*, 134 B.R. at 505; *Nellis v. Shugrue*, 165 B.R. 115, 122-23 (S.D.N.Y. 1994).  *See also* 10 COLLIER ON BANKRUPTCY § 9019.02 (15th rev. ed. 2008).

53.     In exercising its discretion, the Bankruptcy Court must make an independent

determination that the compromise or settlement is fair and reasonable and, in making such a

determination, may credit and consider the opinion of the trustee or debtor in possession and

counsel that the compromise or settlement is in fact fair and equitable. *See Shugrue*, 165 B.R. at

122; *In re Purified Down Prods. Corp.*,150 B.R. 519, 522 (S.D.N.Y. 1993).  In addition, the

Bankruptcy Court may exercise its discretion "in light of the general public policy favoring

settlements."  *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998). *See*

*Shugrue*, 165 B.R. at 123 (noting that "the general rule [is] that settlements are favored and, in

fact, encouraged by the approval process").

54.     In determining whether to approve a proposed compromise or settlement, the

Bankruptcy Court need not decide the numerous issues of law and fact raised by the

compromise or settlement but rather should "canvass the issues and see whether the settlement

'fall[s] below the lowest point in the range of reasonableness.'"  *In re W.T. Grant Co.*, 699 F.2d

599, 608 (2d Cir. 1983). *See also Purified Down Prods.*, 150 B.R. at 522 (emphasizing that "the

court need not conduct a 'mini-trial' to determine the merits of the underlying litigation").

55.     In determining whether a settlement should be approved under Bankruptcy Rule

9019, the court must consider: "(a) the probability of success in the litigation; (b) the

difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the

litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the

paramount interest of the creditors and a proper deference to their reasonable views in the

premises."  *Wallis v. Justice Oaks II, Ltd.* (*In re Justice Oaks II, Ltd.*), 898 F.2d 1544, 1549

(11th Cir. 1990) (internal citations omitted).

**B.**    **The Settlement Agreement is in the Best Interests of the Debtors and their Estates**

56.    The decision of whether or not to approve a compromise is within the sound

discretion of the court. *See Langes v. Green,* 282 U.S. 531, 541 (1931); *In re Carson,* 82 B.R.

847 (Bankr. S.D. Ohio 1987); *In re Mobile Air Drilling Co.*, 53 B.R. 605 (Bankr. N.D. Ohio

1985).

57.    Compromises are generally favored in Chapter 11 cases.  *See e.g*., *Barry v. Smith*

(*In re New York, New Haven and Hartford R.R. Co.*), 632 F.2d 955, 959 (2d Cir. 1980).

58.    While the Plan Trust believes that is has a probability of success in litigating

against the claims asserted in the WARN Class Action and does not admit liability, the Plan

Trust recognizes that the claims are complex and would require the expenditure of a significant

amount of time, expense and resultant delay if litigated to conclusion.

59.    The Settlement Agreement is thus of paramount importance to the Plan Trust as it

will prevent the Plan Trust from expending significant resources on protracted litigation and

diminishing the distribution to the Debtors' creditors.

60.    Therefore, it is the Plan Trust's view that the Settlement Agreement is in the best

interests of the Debtors' estates.

61.    A debtor is obligated to maximize the value of the estate and make its decisions in

the best interests of all of the creditors.  *See e.g., Myers v. Martin* (*In re Martin*), 91 F.3d 389,

394 (3d Cir. 1996).  Courts generally defer to a debtor's business judgment when there is a

legitimate business justification for the decision to compromise a dispute. *Id.* at 395.

62.    As reiterated by numerous courts, "a bankruptcy court is not required to hold a

mini-trial on the merits of the settlement.  Instead, it is charged with 'canvassing the issues to

determine whether the settlement falls below the lowest point in the range of reasonableness.'"

*In re Enron Corp.*, 2003 U.S. Dist. LEXIS 1383, at *6 (S.D.N.Y. Jan. 31, 2003) (affirming

bankruptcy court order approving settlement) (quoting *In re Interstate Cigar Co.*, 240 B.R. 816, 822 (E.D.N.Y. 1999)); *Abeles v. Infotechnology* (*In re Infotechnology*), 1995 U.S. App. LEXIS 39883, at *4-5 (2d Cir. Nov. 9, 1995) (the court should not substitute its business judgment for that of the debtor in possession).

63.    A review of the above considerations demonstrates that a settlement of the issues addressed in the Settlement Agreement and on the terms contained therein, is in the best interests of the Debtors' estates, is fair and reasonable, and is within the Debtors' sound business judgment as exercised by the Plan Trustee.[5]

**C.    The Settlement Should Be Preliminarily And Finally Approved As Fair, Reasonable And Adequate To The Class.**

**1.    The Settlement Should Be Preliminarily Approved.**

64.    After class certification, approval of a class settlement generally requires two hearings:  one preliminary approval hearing and one final "fairness" hearing.  MANUAL FOR COMPLEX LITIGATION § 21.632 (2004).

65.    Pursuant to the Federal Rules of Civil Procedure, "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class." Fed. R. Civ. P. 23(e)(1)(A).   Accordingly, the Court has authority to conduct a preliminary fairness review of a proposed class action settlement.  *See* MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.632 (2004).  As part of a preliminary fairness review, the court must "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the . . . proposed settlement, and date of the final fairness hearing." *Id.*

---

[5]  In the event that the Settlement Agreement is not approved by the Bankruptcy Court or the Settlement Agreement does not become binding and enforceable for any reason, the Parties reserve all their rights and nothing in this Motion or in the Settlement Agreement shall be deemed or construed as an admission of any fact, liability, stipulation, or waiver, but rather as a statement made in furtherance of settlement discussions.

66.    At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the "range of reasonableness." 4 Newberg § 11.26. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.,* 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010). "Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *In re Checking Account Overdraft Litigation*, 2011 WL 2258458 at *5 (S.D. Fla. May 24, 2011), *citing Manual for Complex Litigation,* Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

67.    The Settlement Agreement has no obvious deficiencies and falls within the range of reason.  Further, each of the above cited factors favors preliminary approval of the Settlement Agreement.

68.    First, the Settlement Agreement is the result of good-faith, arm's length negotiations between capable adversaries.  The Parties and their predecessors in interest have been in discussions with respect to the WARN Class Action since the adversary was filed over two years ago, and the Class is represented by counsel with extensive experience and expertise in WARN Act matters, including the litigation of WARN claims in bankruptcy.

69.    Second, the Parties and their predecessors in interest engaged in substantial discovery, including the production of thousands of pages of documents and spreadsheets. Extensive information regarding the facts leading to the shutdown and TBW's defenses were produced by TBW and reviewed by Class Counsel.  TBW also shared payroll information, and

the Parties exchanged WARN damages analysis with one another, and engaged in a two-day mediation before a highly qualified mediator with experience mediating complex class actions.

70.     Also, Class Counsel has been appointed class counsel in over forty (40) WARN Act cases and has prosecuted over 75 such claims, a majority of which were litigated in bankruptcy courts as adversary proceedings.  Class Counsel has the experience and skill to both vigorously litigate WARN Act claims and to determine when and to what extent settlement is appropriate.  Class Counsel has exercised that judgment in this case with respect to the Settlement Agreement.

71.     Accordingly, the Court should preliminarily approve the Settlement Agreement.

**2.  The Settlement Should be Finally Approved at the Fairness Hearing.**

72.     The Court should set a Fairness Hearing no earlier than the earliest date for entry of a binding order under 28 U.S.C. § 1715 (a)-(d), at which time the Court should finally approve the Settlement Agreement.  There is a strong judicial policy in favor of settlement and compromise is the essence of settlement.  *Bennett v. Behring*, 737 F. 2d 982, 986 (11th Cir. 1984).  Likewise, a court is to consider the general policy that, [p]articularly in class action suits, there is an overriding public interest in favor of settlement."  *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).  The determination that a settlement is fair is left to the sound discretion of the trial court and will not be overturned absent a clear showing of abuse of discretion.  *Bennett*, 737 F.2d at 986.

73.     Federal Rule of Civil Procedure 23(e)(1)(C) provides that,

> The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate.

74.    In *Bennett v. Behring*, 737 F. 2d 982, 986 (11th Cir. 1984), the Eleventh Circuit articulated the six factors that are to be weighed in determining whether a settlement should be approved as fair reasonable and adequate to a class under Rule 23(e)(1)(C) as follows:

- the likelihood of success at trial,

- the range of possible recovery,

- the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable,

- the complexity, expense and duration of the litigation,

- the substance and amount of opposition to the settlement; and

- the stage of proceedings at which the settlement was achieved.

*Id.*

75.    The Parties submit that not only should the Settlement Agreement be approved as set forth above, but that the Settlement Agreement should also be approved as fair, reasonable and adequate to the Class under the six Rule 23(e)(1)(C) factors enumerated by the Eleventh Circuit, for the following reasons:

- As set forth above, the risks of being unable to establish liability and damages were significant because of the defenses asserted by TBW.  TBW asserted that the shutdown and termination of its workforce was the direct result of the actions taken by the United States Department of Housing and Urban Development and the Government National Mortgage Association, on August 4, 2009, in immediately suspending TBW's authority to originate, sell or service mortgages.  These events, as alleged by TBW, were unforeseeable.  Had this defense prevailed, or any of the other defenses asserted by TBW, the Class would receive no recovery.  The Settlement Agreement provides meaningful relief to the Class without further litigation, trial and possible appeals.

- The terms of the Settlement Agreement is well within the range of possible recovery and well within the range of reasonableness given the uncertainty of establishing liability and the ability to recover against a bankrupt employer. Class Counsel believes that he Settlement Agreement provides for approximately a 70% recovery of the Class' priority WARN claim, with a distribution to the Class to potentially occur this year.

- As set forth above, the suit was initiated over two years ago and the Parties or their predecessors engaged in motion practice regarding the ability to pursue the action outside of the claims process and with respect to certification of the class.  Class Counsel filed 1,135 individual WARN proofs of claim on behalf of its clients as a result of the contested motion for class certification and the impending bar date.  In addition, Class Counsel engaged in extensive discovery, reviewing tens of thousands of documents.  Continued litigation would have been complicated, protracted and expensive, requiring expert witnesses, a significant number of depositions, pretrial motions, trial and possible appeals, thereby depleting the Debtors' estates and delaying and diminishing distributions to the creditors, including Class Members.  Many of the material witnesses are incarcerated around the United States and may be unavailable, imposing substantial additional costs and uncertainty to the outcome of the WARN Act litigation.

- The Settlement Agreement was reached after two years of litigation, and after the essential facts had been thoroughly investigated by Class Counsel through document requests, interviews of witnesses, and the informal exchange of legal and factual theories with counsel.

- Class Counsel and the Class Representatives support the Settlement Agreement and Class Counsel believes that the majority of the remaining Class Members will have a favorable reaction to the Settlement Agreement and will not object.  Class Counsel, who has extensive experience in complex class action litigation, negotiated the proposed Settlement Agreement at arms' length.  The Plan Trust also supports the Settlement Agreement.

For all these reasons, the Settlement Agreement should be approved as fair, reasonable and adequate to the Class.

**D.** **Payments to the Class Representatives for Their Service to the Class are Reasonable and Routinely Awarded.**

76.     The Settlement Agreement provides, subject to Court approval, that each Class Representative receive a service payment in the amount of $10,000 to compensate them for their service to the Class, and $1,500 to the LeForces for terminating their separate district and

bankruptcy court cases in favor of supporting the WARN Class Action, thereby avoiding costly and duplicative litigation. [6]

77.     Courts acknowledge that named plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny.

78.     "Approval of [service] awards is warranted as a matter of policy and is appropriate under applicable precedents." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (approving service awards of $7,500 for the three representative plaintiffs, out of a $4.25 million settlement fund, and noting that courts have found it appropriate to specially reward named class plaintiffs for the benefits they have conferred); *see also Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008) (same); *Holman v. Student Loan Xpress, Inc.*, 2011 WL 940240 (M.D. Fla. Mar. 17, 2011) (approving service awards for class representatives of $5,000 each and noting "[t]he request for service awards for each class and sub-class representative appears both reasonable and consistent with prevailing practice.")

79.     "While the Eleventh Circuit has not expressly set forth guidelines for courts to use in determining incentive awards, there is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action.  In fact, "'[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'"  *Allapattah Srvcs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006) (quoting *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (quoting *In re Southern Ohio Corr. Facility,* 175 F.R.D. 270, 272 (S.D. Ohio 1997) (collecting cases))).  In *Allapattah Services, Inc.,* the court approved

---

[6] In addition to their service payments, the Class Representatives and LeForces will be authorized to participate in the settlement as Class Members.

service awards of 1.5% (which amounted to $15.9 million) of the $1 billion settlement fund to be divided among nine class representatives who "played a substantial role in [the] litigation" factoring in the "time, money and effort incurred, the duration of the litigation, the relatively small personal benefit enjoyed by the Class Representatives as a result of the litigation, the risk of their own litigation costs, the risk of liability for Exxon's costs, the risk of retaliation from Exxon, the out-of-pocket expenses incurred, and the unusual fidelity to the Class Representatives under extraordinarily difficult circumstances." *Id.* at 1220-22.

80.    First, in this settlement on behalf of a certified Rule 23 class, the Class Representatives were not recruited by counsel, they contacted counsel. They organized themselves and other terminated co-workers into information sharing groups in order to gather and disseminate information regarding their sudden unemployment, and to locate and seek advice from qualified WARN counsel. They agreed to bring the action in their name to a highly publicized case, to be subject to paying the defendant's costs of litigation, and to be deposed, and to testify if there was a trial. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D. NY 2005); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007).

81.    Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members. *See Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.") Here, the Class Representatives filed a federal lawsuit in a case involving a highly publicized government shutdown of a company in which executives and officers have been charged and convicted of criminal wrongdoing. While TBW posed no risk of

retaliation, Class Counsel submits there is a risk of adverse consequences when prospective

employers are evaluating them for future job positions.

82.      Second, the Class Representatives should be awarded service payments for the

significant work they undertook on behalf of the class members.  Class Counsel submits that

each of the Class Representatives was integral and necessary to the initiation and success of the

action, given that TBW was a national company with facilities across the country.  The Class

Representatives worked at the larger TBW facilities, covering all the major geographic areas.

They provided Class Counsel with valuable information with respect to the composition of the

Class.  The Class Representatives expended time and effort to assist with the preparation of the

complaint, provided counsel with relevant documents in their possession and assisted counsel in

the investigation of Plaintiffs' claims, helped to notify class members of their rights with respect

to the bar date in order to preserve their WARN Act claims, and kept their respective former

co-workers advised of the progress of the case.  Each took on the task of evaluating the class

size and membership and damages claims with respect to the geographic areas they

represented.  Courts recognize the important factual knowledge that named plaintiffs bring to

employment class actions, including information about employer policies and practices that

affect compensation.  *See Frank*, 228 F.R.D. at 187-88 (recognizing the important role that class

representatives play as the "primary source of information concerning the claims[,]" including by

responding to counsel's questions and reviewing documents).  In addition, Class Representatives

Julie Whiteaker and Debra Orlando attended the two-day mediation in Atlanta, Georgia and

Julie Whiteaker attended the confirmation hearing to support, on behalf of the WARN Class,

confirmation and approval of the Plan.  Ms. Whiteaker and other Class Representatives

expended countless hours communicating and networking with Class Members across the

country about the WARN Class Action in the several social media sites set up by the Class

Members in order to cope with their common plight.

83.     Lastly, the amount of the requested service payments, as set forth in the

Settlement Agreement, is reasonable and consistent with awards given in other WARN class

actions in bankruptcy court. *See e.g.*, *Jones v. Alliance Bancorp*, Case No. 07-51799

(CSS)(Bankr. D. Del. 2010)(awarding class representative service payment of $15,000);

*Mochnal v. EOS Airlines*, Case No. 08-08279-ASH (Bankr. S.D.N.Y. 2008) (awarding $15,000

service payment to the class representative in settlement fund comprised of $350,000 cash plus

35% of general unsecured distributions on behalf of 375 class members); *Binford et al v. First

Magnus Capital, Inc.*, Case No. 08-01494-GBN (Bankr. D. Ariz. 2010)(awarding eight class

representatives service payments of $7,500 from settlement fund of $2.6 million cash plus $2.9

million contingent proceeds); *Updike v. Kitty Hawk Cargo, Inc.*, Case No. 07-04179 (Bankr.

N.D. Tex. 2007) (awarding $10,000 service payments to two class representatives in a settlement

of $1.4 million on behalf of a certified class of 392 members); *Bridges v. ContinentalAFA

Dispensing Co.,* Case No. 08-45921 (Bankr. E.D. Mo. 2008) (awarding $10,000 service payment

to class representative in a class settlement of $1.5 million for approximately 325 employees);

*Johnson v. First NLC Financial Services, LLC,* Case No. 08-01130 (Bankr. S.D. Fla. 2008)

(awarding $5,000 service payments to two class representatives in a $400,000 settlement);

*Aguiar v. Quaker Fabric Corporation*, Case No. 07-51716 (Bankr. D. Del. 2007) (awarding

$15,000 service payment to class representative on behalf of a certified class of 900 for $1

million).

84.     In this case, Class Counsel submits that all of the Class Representatives

performed important services for the benefit of the Class.  In addition to their incurring the risks

inherent in serving as Named Plaintiffs, they provided information during many interviews

regarding the structure of the company, the jobs and compensation of themselves and others, the

physical locations they worked at and other locations they were aware of, the integration of the

parent and subsidiary companies and their businesses, and the events surrounding their

termination and demise of the company.  They produced relevant documents, and they worked

with Class Counsel throughout the case. Accordingly, the $10,000 payments (for a total of

$90,000) are appropriate and justified as part of the overall Settlement Agreement in light of

their services to and risks taken on behalf of the Class.[7] Moreover, the Plan Trust does not

oppose this proposed award of service payments to the Class Representatives.

E.    **Under The Settlement Agreement, Class Counsel Requests a Reasonable Fee of
       One Third of the Distribution with Respect to the Common Fund.**

85.    As part of the Settlement Agreement, Class Counsel is requesting a fee of one-

third of the common fund, net of service payments and inclusive of expenses and the cost of

administering the Settlement.[8] "Lawyers who recover a common fund are entitled to reasonable

attorneys' fees from the fund they created." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478

(1980)(the Supreme Court has consistently recognized the common fund doctrine to permit

attorneys who obtain a recovery for a class to be compensated from the benefits achieved as a

result of their efforts).

86.    Rejecting lodestar as the basis for common fund fees, the Eleventh Circuit has

held that "[h]enceforth in this circuit, attorneys' fees awarded from a common fund shall be

---

[7] No attorneys' fees will be deducted from the service payments totaling $91,500.00, and, pursuant to the terms of the Settlement Agreement, the Class Representatives and LeForces will be issued 1099s for these payments.

[8] Class Counsel has incurred $40,332.71 in expenses through August 24, 2011, and anticipates incurring additional expenses in finalizing the settlement, attending the hearings for preliminary and final approval of the Settlement Agreement, and overseeing the administration of the distribution, including responding to class members' inquiries. In addition, Class Counsel expects to pay a third party administrator $50,000.00 to administer the Settlement Agreement.  Pursuant to the Settlement Agreement, the expenses and cost of administration are included in Class Counsel's fee request of one-third of the common fund, net of Class Representatives' service payments of $91,500.00.

based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) (vacating the district court's order awarding attorneys' fees based upon the lodestar plus risk enhancement method and directing application of a percentage of the common fund).

87.     While the *Camden I* Court observed that "district courts are beginning to view the median of this 20% to 30% range," the Court held that "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Id.* at 774-775.  The Eleventh Circuit subsequently approved a decision of a district court that first determined that the benchmark for fees should be 30% and then adjusted the fee award higher based on the circumstances of the case. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999); *see Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007).   The Eleventh Circuit noted percentages have risen higher.   "To avoid depleting the funds available for distribution to the class, an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." *Camden I*, 946 F.2d at 774-5, *citing* Newberg, supra § 2.08 at 51.

88.     While courts may look towards many factors when justifying the chosen percentage, the Eleventh Circuit holds one factor to be paramount - the "monetary results" "predominate[s] over all other criteria." *Camden I* at 774. *citing Court Awarded Attorney Fees*, 108 F.R.D. at 258, *see Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1202 (S.D. Fla. 2006)(noting the *Camden* court put "particular emphasis on the 'monetary results achieved' in its award of approximately $350 million in attorneys' fees). *See also Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1342 (S.D. Fla. 2007); *Behrens v. Wometco*

*Enterprises, Inc.,* 118 F.R.D. 534, 547-48 (S.D.Fla.1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd,* 899 F.2d 21 (11th Cir.1990).

89.     In rejecting the use of the lodestar method in common fund cases, the Eleventh Circuit rejected any method for determining the reasonableness of an attorney fee which is premised on the number of hours expended, rather than the result achieved. " *Camden I* at 773, *citing Court Awarded Attorney Fees*, Report of the Third Circuit Task Force, October 8, 1985 (Arthur R. Miller, Reporter), 108  F.R.D. 237, 238 (1985).  The Court found that the hours-based criteria fails to meet the goals of common fund cases, including to "'encourage early settlement or determination of cases . . . and to arrive at fee awards that are fair and equitable to the parties and that take into account the economic realities of the practice of law.'" *Id.*

90.     Ideally, the percentage to be awarded "should be negotiated early on  . . . so that the attorneys could devote their full time to attempting to increase the fund for the class, which in turn increases their own fee." *Camden I* at 773-74.

91.     Here, Class Counsel negotiated a contingency percentage of 33⅓% to trial and 40% thereafter, early on with the Class Representatives, and then with 1,135 Class Members. *Camden I* panel indicated that while "monetary results" is preeminent, the court may use other factors in explaining the justification for the fee percentage, some of which are set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714, 717-19 (5th Cir. 1974). *Camden I*, 946 F.2d at 775.  Additionally, the *Camden I* panel identified other factors that may be relevant to a court's determination of an appropriate percentage fee, include: the time required to reach a settlement, the existence of substantial objections from class members, the existence of non-monetary benefits of the settlement, and the economics involved in prosecuting a class action. *Id*.

The relevance of the *Johnson* factors will vary in any particular case, and, rather than requiring a rigid application of each factor, the Eleventh Circuit has left it to the lower court's discretion to apply those factors in view of the circumstances of a particular case.  *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1330 (S. D. Fla. 2001)(a district court is vested with broad discretion in deciding whether to approve a common fund settlement), *see also Purdie v. Ace Cash Express, Inc.*, 2003 WL 22976611 (N.D. Tex. Dec. 11, 2003); *In re Catfish Antitrust Litig.*, 939 F. Supp. 493 (D. Miss. 1993)("not every [*Johnson*] factor need be necessarily considered"); *see also Francisco* at 2008 WL 649124, at *13 (S.D. Fla. Jan. 31, 2008)(following the *Camden I* factors, the district court determined the percentage fee requested was reasonable given class counsel's contingent fee risk, their financial contribution to the case, fees paid in similar cases, the difficult questions at issue, the work in obtaining the result for the class, and time and labor of counsel).

92.    Class Counsel's requested percentage of 33⅓% is supported by the criteria that courts in this Circuit have applied when awarding fees using the *Camden* I factors.

      (a)    The Contingent Nature of the Fee, the Financial Burden Carried by Class Counsel, and the Economics of Prosecuting a Class Action

93.    "A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high.  Cases recognize that attorneys' risk is 'perhaps the foremost factor' in determining an appropriate fee award."  *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp.2d 1334, 1339 (S.D. Fla. 2007).

94.    Class Counsel undertook this action on a contingency fee basis with no assurance of recovery for its time, let alone reimbursement of it's out of pocket expenses.  Class Counsel has received no compensation during the course of this litigation.  Shortly after initiating suit on

behalf of a putative class of several thousand members, the Debtor filed for bankruptcy with minimal cash assets in the estate.   Thus, "from the time Class Counsel filed suit, there existed a real possibility that [Class Counsel] would achieve no recovery for the class and hence no compensation." *Francisco* at 2008 WL 649124, at *14 (S.D. Fla. Jan. 31, 2008)(finding this factor weighed in favor of class counsel's requested fee percentage).  When an agreed fee is entirely contingent, meaning that, had class counsel recovered nothing for the class, they would not have been entitled to any fee at all, that is a substantial risk of litigation that can justify the fee requested. *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992).

95.    Moreover, both liability and damages were vigorously contested by TBW and the Committee, and there was no guarantee of (1) class certification; (2) ultimate recovery; or (3) collectability of an award due to the Debtors' bankruptcy cases.  Class Counsel bore the burden of ultimately demonstrating to the Court that a group of employees existed with common questions of law and fact such that the case could be maintained as a Rule 23 class action, and that the suit should proceed as an adversary proceeding versus the more burdensome and costly claims process.  Class Counsel was successful in overcoming TBW's and the Committee's Motion to Dismiss. It was successful in obtaining class certification over TBW's and Committee's opposition, and able to achieve a significant recovery for the Class, however, none of these results were "foreseeable at the outset."  The relevant risks, therefore, must be evaluated from the "standpoint of plaintiff's counsel as of the time they commenced the suit and not retroactively with the benefit of hindsight." *Francisco* at 2008 WL 649124, at *14.

(b)    The Requested Fee Reflects the Market Rate in Other Complex, Contingent Litigation

96.    "The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate

percentage fee arrangements with their clients . . . courts are encouraged to look to the private marketplace in setting a fee percentage." *Pinto,* 513 F. Supp. 2d at 1340. The "customary fee" in a class action lawsuit is contingent, since virtually no individual plaintiff has a large enough stake in the litigation to justify charging on an hourly basis. *Ressler v. Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992). "In private litigation, 'attorneys regularly contract for contingent fees between 30% and 40% directly with clients.'"*Francisco,* 2008 WL 649124, at *14 (S.D. Fla. Jan. 31, 2008), *citing Pinto,* 513 F. Supp. 2d at 1341.

97.     As mentioned, here, the Class Representatives each agreed to compensate Class Counsel on a one-third contingency basis. In addition, Class Counsel was individually retained by 1,135 former TBW employees to file and litigate WARN claims on their behalf through the proof of claim process, also on a one-third contingency basis.[9] Accordingly, approximately 40% of the Class contracted to compensate Class Counsel on a one-third contingency basis. Applying this percentage to the Class as a whole is appropriate and consistent with the rationale that "'persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched.'" *Pinto*, 513 F. Supp.2d. at 1338, *citing Boeing Co.*, 444 U.S. at 478.

98.     Moreover, large-scale WARN Act cases of this type are, by their very nature, complicated and time-consuming. Any lawyer undertaking representation of large numbers of affected employees in WARN Act actions inevitably must be prepared to make a tremendous investment of time, energy and resources. Due also to the contingent nature of the customary fee arrangement, Class Counsel made this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Given the Debtor's bankruptcy, there was an overarching and very real possibility that Class Counsel would prevail on liability, be awarded

---

[9] Given Plaintiffs' Motion for Class Certification was opposed and not yet decided, and Plaintiffs' Motion to Enlarge the Bar Date for WARN Act Claims had been denied by this Court, Class Counsel timely filed individual proof of claims for 1,135 former TBW employees in order to preserve their right to WARN damages.

an allowed claim, which would be uncollectible because the estates are insolvent.  The demands

and risks of this type of litigation overwhelm the resources – and deter participation – of many

traditional claimants' firms.

99.    Class Counsel submits that the award of a fee of one-third of the common fund,

net of service payments and inclusive of expenses, is fully warranted based on awards of this

kind.  As to fees in similar cases, Class Counsel has consistently been awarded fees of one-third

of the class recovery in WARN cases by bankruptcy courts, including in the courts of the

Eleventh Circuit. *See Johnson v. First NLC Financial Services, LLC,* Case No. 08-01130 (Bankr.

S.D. Fla. 2008) (awarding attorneys' fees of 33⅓% of $400,000 settlement)*; Jackson v.*

*Qimonda North America, Corp.,* 09-50912-MFW (Bankr. D. Del. 2009) (awarding attorneys'

fees of 33⅓ % of up to $35 million settlement fund*); Mochnal v. EOS Airlines, Inc.,* Case No.

08-08279 (Bankr. S.D.N.Y. 2008) (awarding attorneys' fees of 33⅓% of settlement of

approximately $1.7 million); *Rasheed v. American Home Mortgage Corp.,* Case No. 07-51688

(Bankr. D. Del. 2007) (awarding undersigned co-class counsel a fee of 33⅓% of the settlement

fund of $6.5 million); *Binford, et al v. First Magnus Capital, Inc.,* 08-bk-01494-GBN (Bankr. D.

Ariz. 2010)(despite Ninth Circuit attorneys' fees benchmark of 25%, awarding attorneys' fees of

33⅓% of settlement of $2.6 million case and $2.9 million contingent proceeds); *Updike v. Kitty*

*Hawk Cargo, Inc.,* Case No. 07-04179 (Bankr. N.D. Tex. 2007) (awarding attorneys' fees of

33⅓% of $1.4 million settlement); *Bridges v. ContinentalAFA Dispensing Co.,* Case No. 08-

45921 (Bankr. E.D. Mo. 2008)(awarding attorneys' fees of 33⅓% of $1.5 million

settlement);and *Aguiar v. Quaker Fabric Corporation,* Case No. 07-51716 (Bankr. D. Del. 2007)

(awarding attorneys' fees of 33⅓% of $1 million settlement). And in more than 30 WARN actions class counsel was awarded a one-third fee.[10]

(c)   The Novelty and Difficulty of the Questions Involved

100.   This case arises under the WARN Act, a statute that is often violated, but infrequently litigated.  Pursuing a WARN claim on a class wide basis as an adversary proceeding is even more rare.  Few lawyers or law firms will undertake such cases, and, in fact, Class Counsel is one of only a handful of lawyers in the country who have the experience and expertise to bring these claims. *Noell v. Suncruz Casinos*, 2009 WL 541329, at *1 (M.D. Fla. March 4, 2009) (awarding 30% of the common fund plus expenses in a WARN suit which was settled at an early stage, primarily due to the novelty of the claim and the experience of counsel).

101.   This case presented novel issues of law and fact.  TBW and Committee challenged Counsel's ability to bring the claim as an adversary proceeding, challenged the ability to proceed on a class wide basis, and asserted various affirmative defenses to WARN liability, including the liquidating fiduciary defense and the unforeseeable business circumstances defense.  From the outset, TBW challenged Plaintiffs' claim of "single employer" liability and the composition of the proposed class; the Committee intervened and asserted that many of the

---

[10]*See, e.g. Madley v. Florida Cypress Gardens, Inc.*, Case No. 8:03-CV-00795-T-17TBM (M.D. Fla. 2003); *Adkins v. Pritchard- Brown*, Case No. 5:03-CV-129-OC 10 GRJ (M.D. Fla. 2003); *In re Thomaston Mills, Inc.*, Case No. 01-52544 (RFH) (Bankr. M.D. Ga. 2001); *In re Consolidated Freightways Corporation*, Case No. 02-24284-MG (Bankr. C.D. Cal. 2002); *Powell v. Creighton Incorporated*, Case No. 1:01-CV-779 (M.D.N.C. 2001); *In re CTC Communications Group, Inc.*, Case No. 02-12873 (PJW) (Bankr. D. Del. 2002)*; In re Dollar Land, Inc.*, Case No. 02-14547 (Bankr. E.D. Pa. 2002); *Johnson v. GMAC Mortgage Group, Inc.*, Case No. C04-2004-LRR (N.D. Iowa 2004); *Morris v. Greenwood Mills. Inc.*, Civil Action No. 8:02-221-24 (D. S.C. 2002); *In re Inacom Corp*, Case No. 00-2426 (PJW) (Bankr. D. Del. 2000); *Teligent, Inc.*, Case No.: 01-12974 (SMB) (S.D.N.Y. 2001); *Bandel v. L.F. Brands Marketing, Inc.*, Civil Action No. 04-CV-1672 (CSH) (S.D.N.Y. 2004); *Baker v. The National Machinery Company*, Case No. 3:02-CV-7444 (N.D. Ohio 2002); *Deninno v. PennAmerican Coal Company, L.P.*, Civil Action No. 03-0320 (W.D. Pa. 2003); *In re Pliant Systems, Inc.*, Case No. 01-01264-5 ATS (Bankr. E.D.N.C. 2001); *Gibson v. Sonic Foundry, Incorporated*, Case No.CV-03-4062 SVW (C.D. Cal. 2003); *Ballentine v. Triad International Maintenance Corporation*, Case No. 01-10357 (E.D. Miss. 2001); *Trout v. Transcom USA*, Case No. 1:03-cv-0537-LJM-WTL (S.D. Ind. 2003); *Padgett v. Wireless Retail, Inc.*, Case No. CV-04-1170 PHX-SR (D. Ariz. 2004).

putative class members were in fact to blame for the downfall of TBW and, as a matter of equity, should be precluding from recovery.  In sum, the case presented numerous factual and legal complexities and was vigorously opposed by TBW and the Committee.

        (d)       The Skill, Experience, and Reputation of Class Counsel

102.    Here, Class Counsel's management of the litigation in a disciplined and pragmatic fashion confirms that this litigation was ably prosecuted for the benefit of the putative class.  The litigation required considerable skill and experience to successfully conclude.  Counsel's efforts in efficiently bringing a complex litigation to a successful conclusion are the best indicator of the experience and ability of the attorneys involved.  *Ressler v. Johnson*, 149 F.R.D. 651(M.D. Fla. 1992)(class counsel's experience in trying four similar cases, along with relevant appellate experience, earned the respect of defense counsel and no doubt contributed to the efficient prosecution and the settlement of the action).

103.    Class Counsel has substantial experience in prosecuting large scale class and collective actions on behalf of employees and, specifically, WARN Act class actions such as this one.  As noted above, Jack A. Raisner, a partner in the New York based firm of Outten & Golden LLP, a member of the firm's Class Action Practice Group and co-chair of the firm's WARN Act Class Action Practice Group, has extensive experience litigating plaintiff's employment rights matters, with a focus on the prosecution of class action and impact litigation of employment discrimination and wage and hour claims.  René S. Roupinian, a partner of Outten & Golden LLP and co-chair of the firm's WARN Act Class Action Practice Group and a member of its Class Action Practice Group, has represented tens of thousands of former employees in more than 75 WARN Act class actions, many of which were litigated in bankruptcy court.

104.    Class Counsel was retained by the Class Representatives based on the firm's experience, expertise, and willingness to expend the time necessary to effectively litigate this

case. Outten & Golden LLP has been consistently retained in other WARN class actions by thousands of plaintiffs.  The paucity of expert WARN counsel implies few, if any, other counsel have the skill, experience and expertise required to handle such cases. These facts amply support a finding that this factor is satisfied.

105.    "Moreover, in assessing the quality of representation by the Class Counsel, the Court also should consider the quality of the opposition." *Francisco* at 2008 WL 649124, at *14 (S.D. Fla. Jan. 31, 2008).  TBW was represented by Troutman Sanders, a highly regarded international firm with more than 650 attorneys and sixteen offices.  The Committee was represented by Berger Singerman, a well-regarded Florida based firm with significant bankruptcy experience – that includes WARN Act defense. Both firms "had significant resources at their disposal and consistently took tough positions to promote the interests of their client." *Id*. at 15.

(e)    The Result Achieved for the Class

106.    Held to be the most important factor, the monetary result achieved here on behalf of the Class is significant.  On average, Class Counsel believes that Class Members will receive approximately 70% of their maximum priority WARN damages, and that the largest sub-group within the class will receive over 80% of their full priority WARN damages on the strength of their claims (those Class Members who worked at or reported to locations for which there was no dispute in terms of WARN coverage, i.e., locations where 50 or more full-time employees worked, will receive over 81% of their maximum priority WARN claim).  Moreover, the Settlement Agreement provides for a distribution to over 2,900 employees many of whom worked at satellite worksites or for one of TBW's affiliated entities.  But for the Settlement Agreement, the likelihood many of the Class Members receiving any recovery would have been in jeopardy.  In light of the legal and factual complexities of this case, there is no doubt that this

is an extremely favorable settlement for the Class. The fact that these substantial amounts are available to Class Members without the uncertainty of trial, and are being delivered through this expeditious settlement rather than another year of litigation and appeal, qualifies the results of this settlement as excellent under any reasonable assessment. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (recognizing that in making a fee award the "most critical factor is the degree of success obtained.").

107.    Class Counsel provided legal services with considerable skill in the face of the difficult liability issues.  The services were rendered with efficiency, in light of the complexity of the issues, the difficulty of addressing the several defenses, and the need for discovery.  Class Counsel has developed special expertise in prosecuting WARN Act claims.  Class Counsel's experienced representation in this case was directly responsible for bringing about the positive settlement and weighs in favor of granting the requested fees.  The Class Representative supports the settlement and Class Counsel believes that few, if any, Class Members will object and that those objections, if any, will not be substantial or merited.

(f)    The Time and Labor of Class Counsel

108.    Courts scrutinized billable time and fees incurred by counsel before the Eleventh Circuit replaced the lodestar method with the percentage fee method in common fund cases in determining the reasonableness of fees. *Camden I Condo. Ass'n, Inc. at* 775 (11th Cir. 1991), *citing Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 692 (M.D. Ala. 1988).  Anticipating the *Camden I Court*'s abandonment of such scrutiny, the Court in *Mashburn* recognized that the problem with the hourly or lodestar rate inquiry is that it "only encourages plaintiffs' attorneys to prolong litigation in order to "milk" as much of a fee as possible out of a case."  It found that permitting "a percentage fee award allows the attorneys involved to concentrate their efforts solely on achieving a high rate of return for their clients and the class, which in turn raises

counsel's own fee, instead of devoting their efforts to putting enough hours into the case to generate a sizable fee without concern for the best interests of the class members." *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 696 (M.D. Ala. 1988).

109.    In *Mashburn*, the court awarded attorneys' fees of 33⅓% of a cash fund of $9,925,000, or $3.4 million.  Although it relied upon the percentage method, the court, in an "abundance of caution," (because the 11th Circuit had not yet adopted the percentage method), checked the fee against the then-current lodestar method.  It found the attorneys' fee actual lodestar was less than 20% of the settlement; indeed the actual fees were about $1,000,000 or closer to 10% of the cash portion of the settlement and 6% of the full settlement. The court's grant of $3.4 million was more than triple the actual fees – i.e., a 3.1 "multiplier" under the lodestar method. The *Mashburn* court nevertheless found that such a multiplier was comfortably within the acceptable range under the lodestar method.  It reasoned that counsel's "multiplier" was well earned because the value of the time spent by counsel was exceptionally high *precisely because* of counsel's efficiency in keeping the litigation short and inexpensive.

110.    The benefits achieved by counsel in *Mashburn* were "magnified by the fact that class counsel was able to achieve these results in a very short period of time." *Id*. at 693.

111.    The *Mashburn* court found that,

> [h]ad the case not been settled at this early stage, it is this Court's opinion that it would have been *at least* another year until trial. During that year, the expenses incurred by class counsel would have multiplied by several times due to the increased need for the taking of a substantial number of depositions, perhaps numbering as many as a hundred or more, and the need to hire numerous expert witnesses on several issues including accounting issues, class-wide damages, and expert testimony regarding the professional duties and responsibilities of attorneys. Even if class counsel had prosecuted this case until its ultimate end in this court, it is likely that they would not have achieved any result for the class for several years, and, even then, the final result may not have been as favorable to the class as the settlement heretofore approved by this Court.

*Id*. 693.

112.    The early settlement structure in *Mashburn* doubly benefitted the class by sparing the defendant ruinous litigation expense.  The court found that continued litigation would have forced the entity, "which obviously has had its financial struggles, into bankruptcy. A substantial number of the class members still own stock in NHC and it would not be to their benefit or to the benefit of any of the litigants or the public for the company to bankrupt." *Id.* 693 (M.D. Ala. 1988).

113.    Here, WARN counsel's efficiency exponentially magnified the value of the $15,000,000 settlement to all parties.  Because the Debtor was already in bankruptcy – every dollar WARN counsel saved the estate by tempering the litigation was a dollar put into the pockets of the creditors, including the Class Members.  Class Counsel did this in part by calibrating the prosecution of the adversary proceeding with the progress of the bankruptcy proceeding.  While rights were preserved and essential issues were vigorously litigated and resolved, unnecessary litigation that could have dissipated millions of dollars in fees was averted.

114.    Class Counsel acted quickly and resourcefully in putting on file an adversary proceeding that well-represented the wide-geographic footprint of TBW. Class Counsel then was able to streamline the litigation – and achieve significant cost-savings for the estate by folding the other WARN litigation, brought in other courts, into the *Callahan* action – and have those cases dismissed. Class Counsel assembled and met with large groups of employees in Ocala and Atlanta to gather and disseminate information.  Class Counsel forbore, though, from launching full discovery or even forcing the estate to answer the Complaint right away. Rather, Class Counsel minimized pressure on the estate to litigate while it was engaged in the all-important, complex and delicate work of assembling and liquidating assets and determining the course of the Chapter 11 estate for the benefit of the creditors.  Class Counsel sought to spare the estate

from having to handle thousands of WARN proofs of claim but, when the bar date could not be modified, it assembled and submitted more than one thousand such proofs of claims, by sifting through the person claims of its clients and presenting the estate with proofs of claim in an orderly fashion.

115.    Class Counsel staved off a challenge to the adversary complaint and class certification from TBW and the Committee.  It reviewed many thousands of pages of discovery documents.  In preparation for mediation, it briefed all of the issues in the case, including, and perhaps most importantly the unique and multifarious settings in which the employees seeking relief under the WARN Act worked and were associated with TBW.  The pre-trial litigation on these issues alone would have been extraordinarily complex and costly, and have implicated many novel legal questions requiring adjudication.  By marshaling these facts and law and negotiating a settlement early, Class Counsel spared Debtors from paying billable attorneys significant sums.  This achieved an exceptional monetary result for all the creditors, as well as the Class, and as such deserves to be rewarded and incentivized from the standpoint of both sound bankruptcy and class action procedure.

116.    Class Counsel's ultimate "lodestar" of fees plus expenses will not be fully documented until after the final approval and settlement administration phases. Were the amount to fall near or even below the lower end of the 20%-30% of settlement range as in did in *Mashburn*, Class Counsel's requested 33⅓% fee percentage would be well-justified, as was the request in *Mashburn*.  The value of the time and labor of Class Counsel is as high, or higher, than it was in *Mashburn*.  Here, Class Counsel extracted an excellent value for the Class, through an efficient and judicious use of legal resources that added value to the estate and its creditors.

117.     Public policy weighs in favor of granting Class Counsel's requested fees.  Here, in addition to acknowledging the significant result achieved for the benefit of the class, an award of one-third of the common fund would also further the public policy of "encouraging counsel to act as private attorneys general to vindicate the rights of class members, most of whom have small individual claims."  *Francisco v. Numismatic Guaranty Corporation of America*, 2008 WL 649124, at *13 (S.D. Fla. Jan. 31, 2008)(granting class counsel's request for 30% of the common fund in a case involving significant risk and monetary benefits).

118.     As outlined above, but for the work of Class Counsel and their willingness to bear the entire risk of bringing this litigation to fruition, Class Members likely would receive nothing on their claims.  The WARN Act is a remedial statute designed to protect the rights of employees. *Local Union 7107 v. Clinchfield Coal Co*., 124 F.3d 639, 640 (4th Cir. 1997) ("Because WARN is remedial legislation, its exceptions are construed  narrowly")(citations omitted); *Washington v. Aircap Industries, Inc*.,860 F. Supp. 307, 315 (D.S.C. 1994) (holding that because WARN is remedial, exceptions to its application "are to be narrowly constructed") (citations omitted); *Bradley v. Sequoyah Fuels Corp.*, 84 F. Supp. 863, 867 (E.D. Okla. 1994) ("WARN is a remedial statute and must be broadly construed.").  Fair compensation for attorneys who take on such litigation furthers the remedial purpose of such statutes.  Moreover, awarding Class Counsel's requested percentage of the fund encourages prompt and efficient resolution of class litigation such as this.  *See, Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261, 1268 (D.C. Cir. 1993).

WHEREFORE, the Parties respectfully requests that the Court: (i) preliminarily approve the Settlement Agreement, attached as **Exhibit A**; (ii) approve the form and manner of Notice to the Class of the Settlement, attached as **Exhibit B**; (iii) enter an Order granting the Preliminary

Relief in substantially the same form as that attached as **Exhibit C** setting a Fairness Hearing to finally approve the Settlement Agreement no earlier than the earliest date for entry of a binding order under 28 U.S.C. § 1715 (a)-(d); following the Fairness Hearing enter an Order in substantially the same form as that attached as **Exhibit D** giving final approval to the Settlement Agreement and (v) grant such other and further relief as is just and equitable.

Respectfully submitted, this ___ day of October, 2011.

Outten & Golden LLP
*Attorneys for Plaintiffs*
Jack A. Raisner
René S. Roupinian
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000
Facsimile: 212-977-4005

By: */s/ René S. Roupinian*_____
        René S. Roupinian

Troutman Sanders, LLP
*Attorneys for The Taylor Bean & Whitaker Plan Trust*
Jeffrey W. Kelley
Michael Kaufman
Jana Korhonen
600 Peachtree Street, Suite 5200
Atlanta, GA  30308-2216
Telephone: 404- 885-3313
Facsimile: 404-962-6601

By: */s/ Jeffrey W. Kelley*_____
        Jeffrey W. Kelley
        Georgia Bar 412296

Berger Singerman
*Attorneys for The Taylor, Bean & Whitaker Plan
Trust*
200 South Biscayne Boulevard
Suite 1000
Miami, Florida33131
Telephone: (305) 755-9500
Facsimile:  (305) 714-4340

By: */s/ James D. Gassenheimer*_____
        James D. Gassenheimer
        Florida Bar No. 959987